IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30526
Summary Calendar
_____

VALERIE BRANCH

Plaintiff-Appellant

versus

CITY OF NEW ORLEANS; CIVIL SERVICE COMMISSION OF THE
CITY OF NEW ORLEANS

Defendants-Appellees

and

KATY TORREGANO; LEONARD SIMMONS, JR

Defendants

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(93-CV-1273)
_____

January 31, 1996
Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Valerie Branch ("Branch") sued the City of New Orleans ("the City") alleging discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796 (1985 and Supp. 1995), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (1995).

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Following a jury trial, the district court entered judgment for the City on the jury verdict, and subsequently denied Branch's post-trial motion for judgment as a matter of law, or, alternatively, for a new trial. Branch appeals. Finding no error, we affirm.

## I. FACTUAL BACKGROUND

Branch suffers from ulcerative colitis and Crohn's disease. Her condition was first diagnosed in 1981. Ulcerative colitis is a chronic inflammation of the lining of the colon; Crohn's disease is a more severe version of ulcerative colitis. The main symptom of ulcerative colitis and Crohn's disease is chronic diarrhea, but the condition is characterized by periods of remission during which the patient experiences no symptoms, and periodic flare-ups during which the patient may experience severe diarrhea and abdominal discomfort. The periods of remission vary from patient to patient, and it is possible for a person with this disease to remain asymptomatic for as long as ten years.

Branch was first employed by the City on October 16, 1978, as a Class III worker under the City Civil Service System. In August 1991, Branch moved to the Sanitation Department and assumed the position of Recycling Coordinator for the City. In May 1992, Branch experienced a flare-up of ulcerative colitis, causing her to take several days of sick leave. Branch was out on sick leave from May 18 until June 21, 1992. Branch returned to work on June 22 and 23, but on the evening of June 23 she

began experiencing severe abdominal pain, so she again took several days of sick leave. On July 8, her symptoms having worsened, Branch was admitted to the hospital. She was discharged on July 17 and remained at home recovering until she was terminated from her position on August 24, 1992.

While Branch was out on sick leave, her supervisor, Kathy Torregano ("Torregano") sent several written memoranda to Branch requesting information about her sick leave and questioning Branch's job performance. Specifically, Torregano sent letters to Branch on June 29, July 9, and July 21 requesting that Branch provide a doctor's certification of the necessity of her sick leave, informing Branch that her failure to timely provide a doctor's certificate--as well as deficient job performance-- subjected her to disciplinary action, and listing the possible disciplinary options, including termination. Dr. Helm, Branch's treating physician, sent Torregano letters regarding Branch's condition on July 29 and August 7; however, Torregano found these letters unsatisfactory because they did not indicate when Branch could return to work. On August 19, an administrative hearing was held to discuss Branch's job performance and her failure to obtain a proper doctor's certification. Following the hearing, Torregano informed Branch that she was terminated effective August 24, 1992, and explained that Branch had a right to appeal the termination to the New Orleans Civil Service Commission ("the Commission"). After Branch was notified of her termination, Dr. Helm sent notice to Torregano that Branch would be recovered and

3

able to return to work as of September 8, 1992.  Branch filed an appeal with the Commission, which determined that Branch was terminated for inadequate job performance and refused to reinstate her.

On April 16, 1993, Branch sued the City of New Orleans, Torregano, and Leonard Simmons, the Chief Administrative Officer for the City, alleging discrimination based on race, disability and retaliation for protected activities in violation of 42 U.S.C. §§ 1981 and 1983; the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. §§ 701-796; and the Americans with Disabilities Act ("the ADA"), 42 U.S.C. §§ 12101-12213.  The district court dismissed Branch's claims under sections 1981 and 1983, as well as all claims against the individual defendants, Torregano and Simmons.  On March 30, 1994, Branch filed a second amended complaint, adding the Commission as a defendant.

Trial by jury began on December 12, 1994.  On December 13, Branch filed a motion for judgment as a matter of law on the issue of whether Crohn's disease constituted a disability under the Rehabilitation Act and the ADA; the court denied this motion by order dated December 19.  On December 14, the jury returned its verdict, answering "no" to the following special interrogatory: "Do you find by a preponderance of the evidence that Branch was a qualified person with a disability under the Rehabilitation Act and the Americans with Disabilities Act?"  The district court entered judgment based on the jury verdict on January 5, 1995, dismissing with prejudice all claims against all

4

defendants.  On January 17, Branch filed a motion for judgment as a matter of law, or, alternatively, for a new trial, alleging that the evidence did not support the jury's verdict; the court denied this motion by order entered May 8, 1995.  Branch filed a timely notice of appeal on May 18, 1995.

## II. DISCUSSION

On appeal, Branch raises three points of error.  First, she argues that the district court erred in admitting evidence of the Commission's conclusions regarding Branch's appeal of her termination.  Second, Branch contends that the district court erred in denying her December 13, 1994 motion for judgment as a matter of law that her disease was a protected disability under the ADA and the Rehabilitation Act.  Finally, Branch argues that the district court erred in denying her post-judgment motion for judgment as a matter of law.  We will address each allegation of error in turn.

## A.    Evidentiary Ruling

We review the evidentiary rulings of the district court for an abuse of discretion.  Kelly v. Boeing Petroleum Servs., Inc., 61 F.3d 350, 356 (5th Cir. 1995).  We will not reverse a district court's evidentiary rulings unless they are erroneous and substantial prejudice results.  The burden of proving substantial prejudice lies with the party asserting error.  F.D.I.C. v. Mijalis, 15 F.3d 1314, 1318-19 (5th Cir. 1994).

5

Following her termination by Torregano, Branch appealed her supervisor's decision to the Commission, as all civil service employees have a right to do. The Commission held a hearing to determine whether Branch's termination was justified, and concluded that she was fired for deficient job performance. Prior to trial, Branch moved in limine to exclude all evidence of the Commission's findings, arguing that the findings were irrelevant under Federal Rule of Evidence ("FRE") 401, or that their probative value was substantially outweighed by the danger of unfair prejudice under FRE 403. The district court denied the motion, determining that the findings of the Commission were relevant to Branch's claim of disability discrimination, and that an instruction that the jury should independently evaluate all of the evidence would offset any potential for prejudice. During trial and over Branch's objection, the City mentioned the Commission hearing and conclusion in its opening statement and two witnesses testified that the Commission had concluded that Branch was dismissed for cause. On appeal, Branch renews her argument that this evidence was irrelevant and prejudicial. We need not address Branch's claim that this evidence was erroneously admitted because we hold that any error did not result in substantial prejudice to Branch because the jury determined that she was not a qualified individual with a disability protected by the ADA or the Rehabilitation Act. Thus the jury did not reach the question whether the City fired her because of her disability or her job performance.

6

**B.   Judgment as a Matter of Law**

During trial, Branch filed a motion for judgment as a matter of law on the issue of whether ulcerative colitis or Crohn's disease was a protected disability under the Rehabilitation Act and the ADA.  The district court denied this motion, reasoning that, although the City did not contest that Branch suffers from Crohn's disease, it contended and had presented evidence that her medical impairment does not substantially limit her major life activities; therefore, a jury could reasonably conclude that Branch was not a person with a disability as defined in the Rehabilitation Act and the ADA.  After judgment was entered, Branch renewed her motion for judgment as a matter of law, arguing that the evidence did not support the jury's conclusion that she was not a qualified person with a disability.  Once more, the district court denied this motion, as well as Branch's alternative new trial motion.  On appeal, she again contends that ulcerative colitis is a protected disability as a matter of law, and because the City did not contest that she suffers from ulcerative colitis, she was entitled to judgment as a matter of law, or at least a new trial to determine whether the City discriminated against her because of her disability.

We review the district court's denial of a motion for judgment as a matter of law de novo.  Conkling v. Turner, 18 F.3d 1285, 1300 (5th Cir. 1994).  We employ the same standard as the district court to determine whether sufficient evidence exists to support the jury verdict.  Leatherwood v. Houston Post Co., 59

7

F.3d 533, 536 (5th Cir. 1995).  We consider all the evidence in the light most favorable to the party opposed to the motion.  Id.  A judgment as a matter of law should not be granted unless "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable [persons] could not arrive at a contrary verdict."  Id.; Conkling, 18 F.3d at 1323.  We review the denial of a motion for new trial for an abuse of discretion.  Calcasieu Marine Nat'l Bank v. Grant, 943 F.2d 1453, 1464 (5th Cir. 1991).

To recover under the Rehabilitation Act, a plaintiff generally must demonstrate that she was an otherwise qualified individual with a disability, that she worked for a program or activity that received federal financial assistance, and that she was adversely treated solely because of her disability.  Kelly, 61 F.3d at 365.  The ADA similarly prohibits discrimination "against a qualified individual with a disability because of the disability" with respect to hiring, firing and other terms and conditions of employment.  42 U.S.C. § 12112(a); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 (5th Cir. 1995).  The ADA and the Rehabilitation Act define a disability in essentially the same terms.  Daugherty v. City of El Paso, 56 F.3d 695, 698 (5th Cir. 1995).  The term "disability" means:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an individual with a disability];
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); see also 29 U.S.C. § 706(8)(B). The parties did not dispute that ulcerative colitis and Crohn's disease are physical impairments, nor did the City contest the allegation that Branch suffers from ulcerative colitis and Crohn's disease. Rather, the City argued and presented evidence that Branch is not an individual with a disability because her physical impairment does not limit one or more of her major life activities.

"A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." Dutcher, 53 F.3d at 726. "Major life activities," under the ADA and the Rehabilitation Act, include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Id.; 29 C.F.R. § 1630.2(i). "Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." Dutcher, 53 F.3d at 726 (footnotes omitted); 29 C.F.R. § 1630.2(j)(1)(i), (ii).

Sufficient evidence was presented at trial to support the jury's determination that Branch was not a qualified individual with a disability, because sufficient evidence was presented to support the conclusion that Branch's medical impairment did not substantially limit one of her major life activities. First, Branch testified that she functions normally when her condition

9

is inactive, and that her flare-ups usually occur only about once a year, and last only for a few days. Branch also testified that, except for her July 1992 hospitalization, her flare-ups force her to alter her diet and her sleeping patterns, but otherwise they ordinarily do not affect her daily routine. Branch's expert witness, Dr. Hunter, testified that ulcerative colitis or Crohn's disease could stay in remission for periods as long as ten years. Although he testified that the symptoms associated with the disease included chronic diarrhea and abdominal pain, he did not testify that it was an inherently limiting disease, nor did he testify as to specific ways in which the disease could limit a patient's activities.

Although Branch testified that the attacks of diarrhea and abdominal discomfort inconvenienced her, substantial evidence was presented that this inconvenience did not rise to the level of a substantial limitation on her major life activities. Branch's employment records show that, although she was diagnosed with ulcerative colitis in 1981, she was able to function normally throughout her tenure with the City, with the exception of her summer 1992 flare-up. The evidence additionally demonstrated that, following her termination, Branch has been able to maintain employment and has experienced no serious flare-ups. In sum, sufficient evidence exists in the record to support the jury's verdict that Branch was not a qualified individual with a disability as defined by the Rehabilitation Act and the ADA. Therefore, the district court did not err in denying Branch's

10

motion for judgment as a matter of law, nor did it abuse its discretion in denying her motion for a new trial.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

11